UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| TONI K. KELHAM, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-57-TLS |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Toni K. Kelham seeks review of the final decision of the Acting Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits and for supplemental security income. The Plaintiff puts forth two bases for remand. For the reasons that follow, the Court affirms the final decision of the Acting Commissioner.

**BACKGROUND**

On May 7, 2014, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income. (R. 18.) In both applications, the Plaintiff alleged disability beginning October 13, 2012.[1] (*Id.*) These applications were denied initially on July 9, 2014, and upon reconsideration

---

[1] The Plaintiff filed previous applications for disability on March 22, 2011, and those claimed were denied by an ALJ on October 12, 2012. (R. 18.) The Plaintiff appealed that decision to the Appeals Council, but withdrew her request on December 13, 2012. (*Id.*) The current alleged disability onset date—October 13, 2012—is one day after the prior ALJ's decision, and therefore the Plaintiff has not requested reopening that decision. The prior decision, and its findings, remain final and binding.

on August 29, 2014. (*Id.*) Thereafter, the Plaintiff filed a written request for a hearing, which was granted. (*Id.*) On December 9, 2015, the Plaintiff appeared with counsel before an Administrative Law Judge (ALJ). (*Id.*) Amy Kutschbach, an impartial vocational expert (VE), also appeared and testified at the hearing, as did Paul Clark (the Plaintiff's father). (*Id.*)

On January 19, 2016, the ALJ denied the Plaintiff's application, finding she was not disabled through the date of the decision.[2] (R. 18–33.) The ALJ's decision became the final decision of the Commissioner on December 14, 2016, when the Appeals Council denied the Plaintiff's request for review. (R. 1–4.) On February 12, 2017, the Plaintiff filed this claim [ECF No. 1] in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. §§ 423(d)(2)(A), 1382c(a)(3)(B).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. §§ 404.1520, 416.920. The first step is to determine whether the claimant no longer engages in substantial gainful activity. *Id.* In this case, the ALJ found that the claimant has not engaged in substantial gainful activity since the alleged onset date, October 13, 2012. (R. 20.)

---

[2] All citations to regulations in this Opinion and Order are to the versions of the regulations in effect on the date of the ALJ's decision, January 19, 2016.

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under §§ 404.1520(c), 416.920(c). In this case, the ALJ determined that the Plaintiff has the following severe impairments: reduced visual acuity in the right eye; bipolar disorder; unspecified anxiety disorder; and borderline intellectual functioning. (R. 21)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." §§ 404.1520(d), 416.920(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do, despite her limitations—to determine whether she can perform "past relevant work" (§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv)), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience" (§§ 404.1520(a)(4)(v), 416.920(a)(4)(v)).

The ALJ determined that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairs in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that she had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), except that:

> [D]ue to her reduced visual acuity in the right eye, the claimant should avoid exposure to unprotected heights, but she can avoid ordinary hazards in the workplace, such as boxes on the floor and doors ajar. She can read ordinary newspaper or book print, and she can read street signs. The claimant can understand, remember, and carry out simple instructions; she can make judgments on simple work-related decisions; she can respond appropriately to supervision,

coworkers, and usual work situations; she can tolerate occasional interactions with
the general public, and, she can deal with changes in a routine work setting free of
fast paced productions requirements.

(R. 22, 25.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled from her alleged onset date through the date of the ALJ's decision (January 19, 2016). (R. 32.) The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 26–27.) The ALJ further noted that the Plaintiff was capable of performing past relevant work as a store laborer, which did not require the Plaintiff to perform work-related activities precluded by her RFC. (R. 31.) Finally, the ALJ found that even if the Plaintiff could not perform past relevant work as a store laborer, there were jobs that exist in significant numbers in the national economy that the Plaintiff could perform given her age, education, work experience, and RFC. (R. 31–32.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court examines the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 305–06. The Court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [the ALJ's] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff appears to raise two issues on appeal. First, the Plaintiff argues that the ALJ erred when she discredited the Plaintiff's lack of treatment with little discussion of the Plaintiff's mental illness and lack of insurance for extended periods. Second, she asserts that the ALJ improperly cherry-picked evidence from the record to support the medium work limitation in the Plaintiff's RFC. The Defendant disagrees, and asserts that the ALJ properly evaluated the opinion evidence, and that substantial evidence supports the ALJ's decision. The Plaintiff's arguments are interrelated and will be discussed together.

The Plaintiff begins her argument by declaring that the ALJ improperly discounted certain physical issues experienced by the Plaintiff because she did not seek treatment. (Pl. Brief 6.) According to the Plaintiff, the ALJ did not acknowledge that the Plaintiff's mental health issues and lack of insurance could "conspire together against [her], keeping treatment at bay." (*Id.*) It appears that the Plaintiff argues that she did not seek treatment for physical ailments because of her lack of insurance and her poor mental health. The Plaintiff bears the burden of proof regarding her disabling conditions at the alleged onset date of October 13, 2012. *Allord v. Astrue*, 631 F.3d 411, 416 (7th Cir. 2011). She must provide sufficient evidence to support a finding by an ALJ that she is disabled.

The ALJ detailed the medical evidence, or the lack thereof, related to the Plaintiff's claimed physical ailments. For example, the ALJ noted that the Plaintiff was diagnosed with bipolar disease and slightly increased lipids—but no other physical ailments—in August 2012, and that the Plaintiff denied any medical problems during a psychiatric visit in December 2013. (R. 21.) Additionally, the ALJ explained that physical reviews of the Plaintiff's systems came back negative during medication visits at Northeastern Center since October 2014. (*Id.*) The ALJ

noted that the Plaintiff did complain of lower extremity joint pain on March 20, 2015, but that physical reviews of the Plaintiff's systems came back negative during subsequent appointments in June, September, and October of that year. (*Id.*)

The ALJ also reviewed a physical examination performed on July 7, 2014, by consultative examiner B.T. Onamusi, M.D. During this examination, the Plaintiff reported a two year history of hip and knee pain, and she indicated that she did not seek treatment due to her lack of insurance. (*Id.*) Dr. Onamusi's examination showed a decreased range of motion in the lumbar spine and with knee flexion,[3] but no instability in the knees and a full range of motion in the hips. (*Id.*) Further, her gait was normal, sensation was intact, and her muscle power and tone received the highest score on a five-point scale. (*Id.*) The Plaintiff could squat, kneel, tandem walk, and stand on her heels and toes. (*Id.*) Additionally, the Plaintiff could grip, grasp, perform manipulative tasks, and she displayed finger strength. (*Id.*) The ALJ gave great weight to these objective findings, which the ALJ found did not support Dr. Onamusi's opinion that the Plaintiff was limited to light exertional work. (R. 22.)

The ALJ provided reasons for discounting Dr. Onamusi's opinion. Dr. Onamusi noted in his report that the Plaintiff represented pain in her knees and hips, but also noted that there were "minimal objective findings on examination today." (R. 654.) After this single impression, and based on his objective findings detailed above, Dr. Onamusi stated that the Plaintiff was capable of performing light physical demand level activities. (R. 655.) The ALJ discounted this opinion because the Plaintiff's strength was intact, her gait was normal, and she had no instability in her knees or hip. (R. 21–22.)

---

[3] Dr. Onamusi did not provide an explanation for the decreased range of motion in his physical examination notes (R. 653–54), but did document the decreased range of motion (R. 656).

7

The Plaintiff asserts that the ALJ impermissibly analyzed Dr. Onamusi's examination findings and impermissibly compared these findings to Dr. Onamusi's own opinion regarding the Plaintiff's limitations. The Court disagrees. Under the applicable regulations, the ALJ must evaluate a medical opinion under a number of factors, including the evidence that supports the medical opinion and whether the medical source provided an explanation for the opinion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (2016). An ALJ does not "play doctor" when she finds a medical opinion internally inconsistent with the same medical source's examination findings. *Payne v. Colvin*, No. 4:15-CV-43, 2017 WL 655863, at *3 (N.D. Ind. Feb. 17, 2017). Rather, she makes a legal determination on how best to weigh conflicting evidence. *Id.* Here, the ALJ found that Dr. Onamusi's findings did not support his own opinion, which is substantial evidence to support the weight that the ALJ assigned to the opinion.

The Court is satisfied that the ALJ adequately considered the Plaintiff's lack of insurance and the Plaintiff's mental health impairments when the ALJ evaluated the evidence related to the Plaintiff's physical limitations. The Court declines to reweigh the evidence to determine whether the Plaintiff's mental illness is debilitating to an extent that prevented her from seeking treatment for physical pain. The ALJ recognized that the Plaintiff suffered from severe medically determinable mental impairments, but also recognized that there was limited, if any, evidence in the record limiting the Plaintiff to less than medium exertion work. The ALJ found that the objective medical evidence did not support a limitation greater than provided in the RFC. This determination is supported by substantial evidence, and the Court will not substitute its judgment for that of the ALJ.

**CONCLUSION**

Accordingly, the Court AFFIRMS the decision of the Acting Commissioner of the Social Security Administration.

SO ORDERED on March 12, 2018.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
